JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| James McCusker<br>35 Bittersweet Drive, Doylestown, PA 18901 | HIBU PLC, et al. |
| **(b)** County of Residence of First Listed Plaintiff    Bucks<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant    United Kingdon<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)*<br>Clifford E. Haines, HAINES & ASSOCIATES<br>1835 Market Street, Ste. 2420, Philadelphia, PA 19103<br>T: 215-246- 2200 | Attorneys *(If Known)*<br>William M. McSwain; David J. Woolf; Dennis M. Mulgrew, Jr.<br>DRINKER BIDDLE & REATH LLP, 1 Logan Square, Ste. 2000<br>Philadelphia, PA 19103, T: 215-988-2700 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❒ 1   U.S. Government
     Plaintiff

❒ 3   Federal Question
     *(U.S. Government Not a Party)*

❒ 2   U.S. Government
     Defendant

☒ 4   Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❒ 1 | Incorporated *or* Principal Place<br>of Business In This State | ❒ 4 | ❒ 4 |
| Citizen of Another State | ❒ 2 | ❒ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ❒ 5 | ☒ 5 |
| Citizen or Subject of a<br>Foreign Country | ❒ 3 | ❒ 3 | Foreign Nation | ❒ 6 | ❒ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❒ 110 Insurance<br>❒ 120 Marine<br>❒ 130 Miller Act<br>❒ 140 Negotiable Instrument<br>❒ 150 Recovery of Overpayment<br>  & Enforcement of Judgment<br>❒ 151 Medicare Act<br>❒ 152 Recovery of Defaulted<br>  Student Loans<br>  (Excludes Veterans)<br>❒ 153 Recovery of Overpayment<br>  of Veteran's Benefits<br>❒ 160 Stockholders' Suits<br>❒ 190 Other Contract<br>❒ 195 Contract Product Liability<br>❒ 196 Franchise | **PERSONAL INJURY**<br>❒ 310 Airplane<br>❒ 315 Airplane Product<br>  Liability<br>❒ 320 Assault, Libel &<br>  Slander<br>❒ 330 Federal Employers'<br>  Liability<br>❒ 340 Marine<br>❒ 345 Marine Product<br>  Liability<br>❒ 350 Motor Vehicle<br>❒ 355 Motor Vehicle<br>  Product Liability<br>❒ 360 Other Personal<br>  Injury<br>❒ 362 Personal Injury -<br>  Medical Malpractice | **PERSONAL INJURY**<br>❒ 365 Personal Injury -<br>  Product Liability<br>❒ 367 Health Care/<br>  Pharmaceutical<br>  Personal Injury<br>  Product Liability<br>❒ 368 Asbestos Personal<br>  Injury Product<br>  Liability<br>**PERSONAL PROPERTY**<br>❒ 370 Other Fraud<br>❒ 371 Truth in Lending<br>❒ 380 Other Personal<br>  Property Damage<br>❒ 385 Property Damage<br>  Product Liability | ❒ 625 Drug Related Seizure<br>  of Property 21 USC 881<br>❒ 690 Other | ❒ 422 Appeal 28 USC 158<br>❒ 423 Withdrawal<br>  28 USC 157<br><br>**PROPERTY RIGHTS**<br>❒ 820 Copyrights<br>❒ 830 Patent<br>❒ 840 Trademark | ❒ 375 False Claims Act<br>❒ 400 State Reapportionment<br>❒ 410 Antitrust<br>❒ 430 Banks and Banking<br>❒ 450 Commerce<br>❒ 460 Deportation<br>❒ 470 Racketeer Influenced and<br>  Corrupt Organizations<br>❒ 480 Consumer Credit<br>❒ 490 Cable/Sat TV<br>❒ 850 Securities/Commodities/<br>  Exchange<br>❒ 890 Other Statutory Actions<br>❒ 891 Agricultural Acts<br>❒ 893 Environmental Matters<br>❒ 895 Freedom of Information<br>  Act<br>❒ 896 Arbitration<br>❒ 899 Administrative Procedure<br>  Act/Review or Appeal of<br>  Agency Decision<br>❒ 950 Constitutionality of<br>  State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR**<br>❒ 710 Fair Labor Standards<br>  Act<br>❒ 720 Labor/Management<br>  Relations<br>❒ 740 Railway Labor Act<br>❒ 751 Family and Medical<br>  Leave Act<br>❒ 790 Other Labor Litigation<br>❒ 791 Employee Retirement<br>  Income Security Act | **SOCIAL SECURITY**<br>❒ 861 HIA (1395ff)<br>❒ 862 Black Lung (923)<br>❒ 863 DIWC/DIWW (405(g))<br>❒ 864 SSID Title XVI<br>❒ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>❒ 870 Taxes (U.S. Plaintiff<br>  or Defendant)<br>❒ 871 IRS—Third Party<br>  26 USC 7609 | |
| ❒ 210 Land Condemnation<br>❒ 220 Foreclosure<br>❒ 230 Rent Lease & Ejectment<br>❒ 240 Torts to Land<br>❒ 245 Tort Product Liability<br>❒ 290 All Other Real Property | ❒ 440 Other Civil Rights<br>❒ 441 Voting<br>❒ 442 Employment<br>❒ 443 Housing/<br>  Accommodations<br>❒ 445 Amer. w/Disabilities -<br>  Employment<br>❒ 446 Amer. w/Disabilities -<br>  Other<br>❒ 448 Education | **Habeas Corpus:**<br>❒ 463 Alien Detainee<br>❒ 510 Motions to Vacate<br>  Sentence<br>❒ 530 General<br>❒ 535 Death Penalty<br>**Other:**<br>❒ 540 Mandamus & Other<br>❒ 550 Civil Rights<br>❒ 555 Prison Condition<br>❒ 560 Civil Detainee -<br>  Conditions of<br>  Confinement | | | |
| | | **IMMIGRATION**<br>❒ 462 Naturalization Application<br>❒ 465 Other Immigration<br>  Actions | | | |

Note: ☒ 320 Assault, Libel & Slander is checked.

## V. ORIGIN *(Place an "X" in One Box Only)*

❒ 1   Original
     Proceeding

☒ 2   Removed from
     State Court

❒ 3   Remanded from
     Appellate Court

❒ 4   Reinstated or
     Reopened

❒ 5   Transferred from
     Another District
     *(specify)*

❒ 6   Multidistrict
     Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
Defamation and violation of the Pennsylvania Wage Payment and Collection law

## VII. REQUESTED IN COMPLAINT:

❒ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ❒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
10/03/2014

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse (Rev. 12/12)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)    Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)    County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)    Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
  United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
  United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
  Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
  Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.** Place an "X" in one of the six boxes.
  Original Proceedings. (1) Cases which originate in the United States district courts.
  Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
  Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
  Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
  Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
  Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
  Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
  Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 35 Bittersweet Drive, Doylestown, PA 18901

Address of Defendant: See attached list.

Place of Accident, Incident or Transaction: Bucks County, PA

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))          Yes ☐ No ■

Does this case involve multidistrict litigation possibilities?          Yes ☐ No ■
*RELATED CASE, IF ANY:*
Case Number: None                    Judge                              Date Terminated:

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
          Yes ☐ No ■

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
          Yes ☐ No ■

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
          Yes ☐ No ■

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
          Yes ☐ No ■

CIVIL: (Place ✓ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ■ All other Diversity Cases
    (Please specify) Defamation & Violation of Pennsylvania Wage Payment     and Collection law

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, David J. Woolf                              , counsel of record do hereby certify:
■ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

**DATE:** October 3, 2014                                                              76484
                                            Attorney-at-Law                        Attorney I.D.#
**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

**DATE:** October 3, 2014                                                              76484
CIV. 609 (5/2012)                        Attorney-at-Law                        Attorney I.D.#

## DEFENDANTS' ADDRESSES

1.      hibu plc
        One Reading Central, Forbury Road,
        Reading, Berkshire RG13YL, United Kingdom

2.      hibu Inc.
        210 RXR Plaza, Uniondale, New York 11556

3.      Pocock is a citizen of California.

4.      Anthony Bates, Elizabeth G. Chambers, John Coghlan, Toby Coppel, Richard

        Hooper, and Bob Wigley are citizens of the United Kingdom.

5.      Carlos Espinosa de los Monteros is a citizen of Spain.

6.      Kathleen Flaherty is a citizen of Virginia.

7.      Bob Gregerson is a citizen of New Hampshire.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| JAMES MCCUSKER | : | CIVIL ACTION |
| | : | |
| v. | : | NO. |
| | : | |
| HIBU PLC, ET AL. | : | |
| | : | |
| | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

**(a)** Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

**(b)** Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.                    ( )

**(c)** Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

**(d)** Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.                    ( )

(e)  Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)                    ( )

**(f)**  Standard Management – Cases that do not fall into any one of the other tracks.                    **(X)**

| | | |
|---|---|---|
| **October 3, 2014** | **William M. McSwain;** **David J. Woolf** **Dennis M. Mulgrew** | **Defendants** |
| **Date** | **Attorney-at-law** | **Attorney for** |
| | | William.Mcswain@dbr.com David.Woolf@dbr.com |
| **(215) 988 -2700** | **(215) 988- 2757** | Dennis.Mulgrew@dbr.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660)10/02

### Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

### SPECIAL MANAGEMENT CASE ASSIGNMENTS (See §1.02 (e) Management Track Definitions of the Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term's intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
- - - - - - - - - - - - - - - - - - - - - - - - -   x
JAMES McCUSKER                                       :
35 Bittersweet Drive                                 :
Doylestown, PA 18901,                                :   Civil Action No. _____
                                                     :
                              Plaintiff,             :
                                                     :
                                                     :   Pennsylvania Court of Common Pleas
              - v. -                                 :   Case No. 2014-01608
                                                     :
HIBU PLC,                                            :
HIBU INC.,                                           :
MIKE POCOCK,                                         :
TONY BATES,                                          :
BOB WIGLEY,                                          :
ELIZABETH G. CHAMBERS,                               :
JOHN COGHLAN,                                        :
TOBY COPPEL,                                         :
CARLOS ESPINOSA de los MONTEROS,                     :
KATHLEEN FLAHRETY,                                   :
RICHARD HOOPER, and                                  :
BOB GREGERSON                                        :
                                                     :
                              Defendants.            :
- - - - - - - - - - - - - - - - - - - - - - - - -   x
```

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1441, defendants hibu PLC and hibu Inc. ("hibu") and Michael Pocock ("Pocock") hereby give notice and remove this case to the United States District Court for the Eastern District of Pennsylvania.

hibu and Pocock respectfully submit the following grounds for removal:

## I.   Nature of the Action

1.   hibu and Pocock are named as defendants in the matter currently captioned *James McCusker vs. hibu PLC, hibu Inc., Mike Pocock, Tony Bates, Bob Wigley, Elizabeth G. Chambers, John Coghlan, Toby Coppel, Carlos Espinosa de los Monteros, Kathleen Flahrety [sic], Richard Hooper, and Bob Gregerson*, pending in the Court of Common Pleas of

Bucks County, Pennsylvania Civil Division, bearing the case number 2014-01610 (the "Action").

2.     James McCusker ("Plaintiff" or "McCusker") commenced the Action by effecting service on hibu and Pocock on September 17, 2014.

3.     In the Action, Plaintiff asserts two claims: (1) defamation against hibu and Pocock; and (2) violation of the Pennsylvania Wage Payment and Collection Law ("WPCL") against all defendants.

## II.   **Basis For Removal**

4.     hibu and Pocock remove the Action to this Court under 28 U.S.C. § 1441(a), because there is complete diversity of citizenship between Plaintiff, on the one hand, and hibu, Pocock, and all other Defendants on the other, as contemplated by 28 U.S.C. § 1332(a).

5.     The Complaint lists McCusker's address as 35 Bittersweet Drive, Doylestown, PA 18901.

6.     None of the defendants are citizens of Pennsylvania.

7.     For diversity purposes, hibu plc is a citizen of the United Kingdom (Compl. ¶ 8). hibu plc is located at One Reading Central, Forbury Road, Reading, Berkshire RG13YL, United Kingdom.

8.     For diversity purposes, hibu Inc. is a citizen of Delaware and New York. hibu Inc. is incorporated in Delaware. hibu Inc.'s headquarters are located at 210 RXR Plaza, Uniondale, New York 11556.

9.     Pocock is a citizen of California.

10.    Anthony Bates, Elizabeth G. Chambers, John Coghlan, Toby Coppel, Richard Hooper, and Bob Wigley are citizens of the United Kingdom.

11.    Carlos Espinosa de los Monteros is a citizen of Spain.

2

12.    Kathleen Flaherty is a citizen of Virginia.

13.    Bob Gregerson is a citizen of New Hampshire.

14.    Taken together, the Defendants are citizens of the United Kingdom, Spain, New York, California, Virginia, and New Hampshire.    All of the named defendants are completely diverse from Plaintiff, who is a citizen of Pennsylvania.    Accordingly, this Court has diversity jurisdiction over the action.

15.    Additionally, the amount in controversy exceeds Section 1332(a)'s $75,000 threshold.  (Compl. ¶ 95, defamation damages "in an amount in excess of $50,000.00" and ¶ 109, WPCL damages "in excess of $50,000.00").

*       *       *       *

16.    This Notice is properly filed in this Court, the United States District Court for the Eastern District of Pennsylvania, as the district within which Plaintiff filed the underlying action in the Pennsylvania Court of Common Pleas.

17.    Copies of all process and pleadings filed in the Court of Common Pleas of Bucks County, Pennsylvania are attached hereto as Exhibit A.

18.    This Notice is being filed within 30 days of September 17, 2014, the date of Plaintiff's service of the Complaint and Notice to Defend on hibu and Pocock.  Thus, this Notice is timely pursuant to 28 U.S.C. § 1446(b).

19.    A copy of this Notice will be promptly served on opposing counsel and filed with the Court of Common Pleas of Bucks County, Pennsylvania.

3

Respectfully submitted,

Dated:  October 3, 2014

William M. McSwain, 86499
David J. Woolf, 76484
Dennis M. Mulgrew, Jr., 312359
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
Telephone:     (215) 988-2700

Andrew R. McGaan, P.C.
Matthew E. Nirider
Christopher S. Burrichter
KIRKLAND & ELLIS, LLP
300 North LaSalle Street
Chicago, IL  60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Attorneys for Defendants*
*hibu PLC, hibu Inc., and Michael Pocock*

4



# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet

_____ Bucks _____ County

| For Prothonotary Use | Case Number: 2014-01608                    0 |
|---|---|
| Docket No: | Receipt:   2014-37-01011    Judge: 26 |
| | Code: 110            Filing: 10488246 |
| | Patricia Bachtle - Bucks Co Prothonotary |
| | B09              3/6/2014 2:50:56 PM |

_The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court._

**SECTION A**

**Commencement of Action:**
- ☐ Complaint
- ☑ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

Lead Plaintiff's Name:
James McCusker

Lead Defendant's Name:
hibu PLC

**Are money damages requested?** ☑ Yes  ☐ No

Dollar Amount Requested:
(check one)
- ☐ within arbitration limits
- ☑ outside arbitration limits

**Is this a _Class Action Suit_?** ☐ Yes ☑ No

**Is this an _MDJ Appeal_?** ☐ Yes ☑ No

Name of Plaintiff/Appellant's Attorney: Adam G. Silverstein, Esquire / Randal S. White, Esquire

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **_PRIMARY CASE._** If you are making more than one type of claim, check the one that you consider most important.

**TORT** _(do not include Mass Tort)_
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability _(does not include mass tort)_
- ☑ Slander/Libel/ Defamation
- ☐ Other:
  _____
  _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other:
  _____
  _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional:
  _____
  _____

**CONTRACT** _(do not include Judgments)_
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
  _____
  _____
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
  _____
  _____
- ☐ Other:
  _____
  _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:
  _____
  _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
  _____
  _____
- ☐ Zoning Board
- ☐ Other:
  _____
  _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other:
  _____
  _____

_Updated 1/1/2011_

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL DIVISION

JAMES McCUSKER                      : File No.
35 Bittersweet Drive                :
Doylestown, PA 18901,               :
                                    : Civil Action -
            Plaintiff,              :
                                    :
      vs.                           :
                                    :
hibu PLC                            :
One Reading Central                 :
Forbury Rd.                         :
Reading                             :
Berkshire                           :
RG1 3YL                             :
United Kingdom                      :
                                    :
            and                     :
                                    :
MICHAEL POCOCK                      :
1348 Skyline Dr.                    :
Laguna Beach, CA 92654-1941,        :
                                    :
                  Defendants.       :
_____      :

Case Number: 2014-01608
Receipt:    2014-37-01011        0
Code: 110              Judge: 26
Patricia Bachtle - Bucks Co Prothonotary        Filing: 10488246
B09          3/6/2014 2:50:56 PM

## **PRAECIPE TO ISSUE WRIT OF SUMMONS**

TO THE PROTHONOTARY/CLERK OF SAID COURT:

    Kindly issue a Writ of Summons in the above-referenced matter.

By: _____
    Adam G. Silverstein, Esquire
    Randal S. White, Esquire
    FOX ROTHSCHILD LLP
    2700 Kelly Road, Suite 300
    Warrington, PA 18976-3624
    Telephone: (215) 345-7500
    Supreme Court I.D. Nos. 70201 / 64020

    *Attorneys for Plaintiff, James McCusker*

Dated: March 6, 2014

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL DIVISION

JAMES McCUSKER                    : File No. 2014-1608
35 Bittersweet Drive              :
Doylestown, PA 18901,             :
                                  : Civil Action -
              Plaintiff,          :
                                  :
         vs.                      :
                                  :
hibu PLC                          :
One Reading Central               :
Forbury Rd.                       :
Reading                           :
Berkshire                         :
RG1 3YL                           :
United Kingdom                    :
                                  :
              and                 :
                                  :
MICHAEL POCOCK                    :
1348 Skyline Dr.                  :
Laguna Beach, CA 92654-1941,      :
                                  :
              Defendants.         :
_____   :

## SUMMONS IN CIVIL ACTION

TO:   **hibu PLC**                      **Michael Pocock**
      One Reading Central               1348 Skyline Dr.
      Forbury Rd.                       Laguna Beach, CA 92654-1941
      Reading
      Berkshire
      RG1 3YL
      United Kingdom

      You are notified that the Plaintiff(s) has/have commenced an action against you.

                                        PATRICIA L. BACHTLE

      SEAL OF THE
      COURT                             PROTHONOTARY

Date: ___3-6-14___                      BY: _____

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

Bucks _____ County

| For Prothonotary Use | |
|---|---|
| Docket No: | Case Number: 2014-01608          0<br>Receipt:     2014-37-01011      Judge: 26<br>Code:  110                    Filing: 10488246<br>Patricia Bachtle - Bucks Co Prothonotary<br>B09              3/6/2014 2:50:56 PM |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- ☐ Complaint
- ☑ Writ of Summons
- ☐ Transfer from Another Jurisdiction
- ☐ Petition
- ☐ Declaration of Taking

Lead Plaintiff's Name:
James McCusker

Lead Defendant's Name:
hibu PLC

**Are money damages requested?** ☑ Yes   ☐ No

Dollar Amount Requested:
(check one)
- ☐ within arbitration limits
- ☑ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes   ☑ No

**Is this an *MDJ Appeal*?** ☐ Yes   ☑ No

Name of Plaintiff/Appellant's Attorney:   Adam G. Silverstein, Esquire / Randal S. White, Esquire

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**SECTION B**

**Nature of the Case:**   Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability (*does not include mass tort*)
- ☑ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** (*do not include Judgments*)
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other

- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other

- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

*Updated 1/1/2011*

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL DIVISION

JAMES McCUSKER                          : File No.
35 Bittersweet Drive                    :
Doylestown, PA 18901,                   :
                                        : Civil Action -
            Plaintiff,                  :
                                        :
        vs.                             :
                                        :
hibu PLC                                :
One Reading Central                     :
Forbury Rd.                             :
Reading                                 :
Berkshire                               :
RG1 3YL                                 :
United Kingdom                          :
                                        :
            and                         :
                                        :
MICHAEL POCOCK                          :
1348 Skyline Dr.                        :
Laguna Beach, CA 92654-1941,            :
                                        :
                    Defendants.         :
_____ :

**PRAECIPE TO ISSUE WRIT OF SUMMONS**

TO THE PROTHONOTARY/CLERK OF SAID COURT:

    Kindly issue a Writ of Summons in the above-referenced matter.

                By: _____
                    Adam G. Silverstein, Esquire
                    Randal S. White, Esquire
                    FOX ROTHSCHILD LLP
                    2700 Kelly Road, Suite 300
                    Warrington, PA 18976-3624
                    Telephone: (215) 345-7500
                    Supreme Court I.D. Nos. 70201 / 64020

                    *Attorneys for Plaintiff, James McCusker*

Dated: March 6, 2014

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL DIVISION

JAMES McCUSKER                                  : File No.  2014-1608
35 Bittersweet Drive                            :
Doylestown, PA 18901,                           :
                                                : Civil Action -
            Plaintiff,                          :
                                                :
        vs.                                     :
                                                :
                                                :
hibu PLC                                        :
One Reading Central                             :
Forbury Rd.                                     :
Reading                                         :
Berkshire                                       :
RG1 3YL                                         :
United Kingdom                                  :
                                                :
            and                                 :
                                                :
                                                :
MICHAEL POCOCK                                  :
1348 Skyline Dr.                                :
Laguna Beach, CA 92654-1941,                    :
                                                :
_____                :
                   Defendants.                  :

## SUMMONS IN CIVIL ACTION

TO:   **hibu PLC**                    **Michael Pocock**
      One Reading Central             1348 Skyline Dr.
      Forbury Rd.                     Laguna Beach, CA 92654-1941
      Reading
      Berkshire
      RG1 3YL
      United Kingdom

You are notified that the Plaintiff(s) has/have commenced an action against you.

                                    PATRICIA L. BACHTLE

SEAL OF THE
COURT                               PROTHONOTARY

Date: ___3-6-14_____              BY: _____

533
354
720
497

HAINES & ASSOCIATES
By:    Clifford E. Haines, Esquire
1835 Market Street
Suite 2420
Philadelphia, PA 19103
Attorney I.D. No.: 09883
Phone:  215-246-2200
Fax    :  215-246-2211
chaines@haines-law.com

*Attorney for Plaintiff, James McCusker*



Case #: 2014-01608  809    10654259
Code: 533        Judge: 26
Patricia L. Bachtle, Bucks County Prothonotary
Rcpt. Z1168250  9/2/2014 3:09:23 PM

| | |
|---|---|
| JAMES MCCUSKER<br>35 Bittersweet Drive<br>Doylestown, PA  18901<br>        *Plaintiff*<br><br>vs.<br><br>HIBU PLC,<br>HIBU INC.,<br>MIKE POCOCK,<br>TONY BATES,<br>BOB WIGLEY,<br>ELIZABETH G. CHAMBERS,<br>JOHN COGHLAN,<br>TOBY COPPEL,<br>CARLOS ESPINOSA de los MONTEROS,<br>KATHLEEN FLAHRETY,<br>RICHARD HOOPER, and<br>BOB GREGERSON<br>        *Defendants* | COURT OF COMMON PLEAS OF<br>BUCKS COUNTY, PENNSYLVANIA<br>CIVIL DIVISION<br><br><br>NO.   *2014-1608*<br><br><br>**JURY TRIAL DEMANDED** |

RECEIVED
PROTHONOTARY
OF BUCKS COUNTY
14 SEP -2  PM 2: 22

**NOTICE TO DEFEND**

You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and notice are served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against

9/2

you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LOCAL HELP.

IF YOU CANNOT AFFORD TO HIRE A LAYWER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Bucks County Bar Association
135 East State Street
Doylestown, PA 18901
Phone: 215-348-9413, 1-80-479-8585
www.bucksbar.org

PA Bar Association: www.pabar.org

HAINES & ASSOCIATES

Date: September 2, 2014                    By: _____
                                               CLIFFORD E. HAINES, ESQUIRE
                                               *Attorney for Plaintiff*

HAINES & ASSOCIATES
By:    Clifford E. Haines, Esquire                    *Attorney for Plaintiff, James McCusker*
1835 Market Street
Suite 2420
Philadelphia, PA 19103
Attorney I.D. No.: 09883
Phone: 215-246-2200
Fax   : 215-246-2211
chaines@haines-law.com

| | |
|---|---|
| JAMES MCCUSKER | COURT OF COMMON PLEAS OF |
| 35 Bittersweet Drive | BUCKS COUNTY, PENNSYLVANIA |
| Doylestown, PA  18901 | CIVIL DIVISION |
| *Plaintiff* | |
| vs. | |
| | |
| HIBU PLC, | NO. |
| HIBU INC., | |
| MIKE POCOCK, | |
| TONY BATES, | |
| BOB WIGLEY, | **JURY TRIAL DEMANDED** |
| ELIZABETH G. CHAMBERS, | |
| JOHN COGHLAN, | |
| TOBY COPPEL, | |
| CARLOS ESPINOSA de los MONTEROS, | |
| KATHLEEN FLAHRETY, | |
| RICHARD HOOPER, and | |
| BOB GREGERSON | |
| *Defendants* | |

## COMPLAINT

James McCusker, by and through his undersigned attorneys, HAINES & ASSOCIATES,

hereby files this Complaint against the above-captioned defendants and in support thereof alleges

the following:

## INTRODUCTORY ALLEGATIONS

1.      On March 6, 2013, Mr. McCusker, a dedicated employee for the past twenty-four years who worked his way up the corporate ladder from a sales position to become the President of hibu Inc., was fired for allegedly providing confidential company information to hibu Inc.'s former Chief Executive Officer, Joe Walsh.

2.      The allegations of improper conduct on the part of Mr. McCusker were false, fabricated, and a pretext for the real motivation behind terminating Mr. McCusker's employment: Mr. McCusker repeatedly questioned not only the soundness but the integrity and validity of grossly inflated financial projections being communicated to the shareholders and creditors of hibu Inc.'s parent corporation, hibu plc. The creditors held the key to the company's ability to continue to operate since the company was, and continues to be, in dire financial straights, desperately seeking to negotiate a new capital structure after defaulting on its obligations to its creditors.

3.      In addition, hibu Inc. and hibu plc's senior management were on a witch hunt for any employees who maintained contact and social ties to Mr. Walsh, the charismatic former CEO of hibu Inc. who was widely seen as a popular executive by hibu Inc.'s thousands of employees. Not long before his employment was terminated, Mr. Walsh, together with a private equity firm, tendered an offer to hibu plc's board of directors to purchase the U.S. assets of hibu Inc. for nearly two billion dollars. The board, in consultation with the new Chief Executive Officer, Mike Pocock, rejected the offer and has since then sat back and watched the value of the company plummet as the new strategic plan put in place began to fail miserably and the company teetered on the brink of insolvency. Upon information and belief, in the fall of 2012, Mr. Walsh and a private equity firm tendered a second offer to the board to purchase the same assets – for

four hundred million dollars. The latest offer has not been acted upon by the board as of the filing of this Complaint.

4.  Moreover, hibu Inc. wanted to avoid its contractual obligation to provide Mr. McCusker with significant severance benefits. The only way to avoid this obligation was to falsely accuse Mr. McCusker of engaging in conduct constituting "cause" for termination under the terms of his employment agreement.

5.  To add insult to injury, immediately following the termination of Mr. McCusker's employment, defendant Mike Pocock, hibu plc's Chief Executive Officer, sent an inflammatory e-mail to thousands of hibu Inc. and hibu plc employees in which Mr. Pocock maliciously defamed and disparaged Mr. McCusker. In his e-mail, Mr. Pocock falsely told the employees that the company had performed a "thorough investigation" and concluded that Mr. McCusker engaged in conduct that was "disloyal and against the interests of [hibu's] employees and other stakeholders." Mr. Pocock went on to further defame Mr. McCusker by implying that the alleged disloyal conduct was so egregious that the company was considering further action against Mr. McCusker, including the institution of "legal proceedings."

6.  Through this lawsuit, Mr. McCusker seeks to recover the severance benefits and other compensatory damages rightfully due to him as a result of the defendants' violation of the Pennsylvania Wage Payment and Collection Law (the "WPCL"). Mr. McCusker further seeks to recover compensatory and punitive damages from Mr. Pocock and hibu plc as a result of the false and malicious defamatory communications made in an effort to tarnish Mr. McCusker's good name and reputation in the community and the industry to which he has faithfully devoted his career.

3

## THE PARTIES

7.     Mr. McCusker is an adult individual currently residing at 35 Bittersweet Drive, Doylestown, PA 18901.

8.     Hibu plc is a publicly traded corporation with its headquarters located in the United Kingdom, at One Reading Central Forbury Road, Reading Berkshire.  hibu plc regularly conducts business in Bucks County, Pennsylvania through its wholly-owned United States subsidiary, hibu Inc.

9.     Hibu Inc. is a Delaware corporation with a place of business at 2201 Renaissance Boulevard, King of Prussia, PA 19406.  Hibu Inc. regularly conducts business in Bucks County, PA, and has employees located in Bucks County, PA.

10.     Mr. Pocock is the Chief Executive Officer and a member of the board of directors of hibu plc.

11.     Tony Bates is the Chief Financial Officer and a member of the board of directors of hibu plc.

12.     Bob Wigley is Chairman of hibu plc's board of directors.

13.     Elizabeth G. Chambers, John Coghlan, Carlos Espinosa de los Monteros, Kathleen Flaherty, Richard Hooper, and Toby Coppel are members of hibu plc's board of directors.

14.     Bob Gregerson is the Chief Executive Officer, Chief Commercial Officer, and sole member of the board of directors of hibu Inc. The individuals identified in paragraphs 10 through 14 will be referred to collectively in this Complaint as the "Individual Defendants."

4

## VENUE

15.     Venue is proper in this Court pursuant to Pa.R.C.P. 2179 as hibu plc and hibu Inc. regularly conduct business in Bucks County, the defamatory statements were communicated to employees located in Bucks County, and the wages and benefits at issue in this case were due and payable to Mr. McCusker at his residence in Bucks County.

### The History of Hibu and Its Employees

16.     Yell Group plc, a publicly traded company based in the United Kingdom, was a supplier of print and online advertising for small and medium-sized businesses. On July 26, 2012, Yell Group plc formally changed its name to hibu plc.  For the sake of simplicity and consistency, Yell Group plc and hibu plc will be referred to in this Complaint as "hibu plc," regardless of time.

17.     Yellowbook Inc., a Delaware corporation, was the publisher of the ubiquitous "Yellow Pages" print and online telephone and advertising directories in the United States. On January 18, 2013, Yellowbook Inc. formally changed its name to hibu Inc. For the sake of simplicity and consistency, Yellowbook Inc. and hibu Inc. will be referred to in this Complaint as "hibu Inc.," regardless of time.

18.     Hibu Inc. is an indirect, wholly-owned subsidiary of hibu plc. The two entities, together with several other operating entities throughout the world, are generally referred to by hibu plc as a singular "group" for purposes of financial reporting and operations.

19.     From approximately 1987 until his employment was terminated in the Fall of 2011, Joe Walsh was hibu Inc's Chief Executive Officer.  Mr. Walsh is known as an industry leader, and was revered by and acted as a mentor to many former and current employees of hibu Inc., including Mr. McCusker.

5

20.     Under Mr. Walsh's tenure, hibu Inc. thrived as a profitable subsidiary of hibu plc.

21.     Mr. McCusker began his employment with hibu Inc. in 1989 as a sales representative, working his way up through various leadership positions in the company, leading to his appointment as President in April of 2012.

22.     From April 15, 2012 until his employment was terminated on March 6, 2013, Mr. McCusker served as President and Chief Sales Officer of hibu Inc.

23.     Mr. Walsh served as a mentor to Mr. McCusker during Mr. McCusker's career with hibu Inc.

### Hibu's Financial Difficulties and Transition Strategy

24.     With the advent of and increasing popularity of the Internet, traditional print and advertising directories such as the "Yellow Book" became less relevant and profitable.

25.     As hibu plc attempted to shift its business model to meet the changing times, revenue from its traditional print-based directory business began to significantly decline. Its large debt burden and decreasing cash flow combined to place hibu plc in a financially precarious position.

26.     In 2009, hibu plc underwent a complete refinancing and recapitalization, resulting in the business being funded primarily through bank loans, as set forth in the facilities agreement with its lenders (the "2009 Lenders").

27.     As it struggled to meet its obligations to the 2009 Lenders, in 2010 Bob Wigley, the Chairman of hibu plc's board of directors instructed Mr. Walsh to look for potential purchasers of hibu plc's United States assets, including hibu Inc.

28.     In the Fall of 2010 Mr. Walsh himself, together with a private equity firm, submitted an offer to purchase the U.S. assets of hibu Inc. for nearly two billion dollars.

6

29.     Around the same time, hibu plc sought new leadership and a new strategy. In January of 2011, hibu plc appointed Mr. Pocock as its Chief Executive Officer and as a member of the board of directors. Within a month of Mr. Pocock's appointment, the board rejected Mr. Walsh's offer. Since Mr. Pocock's appointment and the rejection of Mr. Walsh's offer, the value of hibu plc's United States assets has dropped precipitously, to the detriment of the company and its stakeholders.

30.     After a six month study with outside consultants, in July of 2011, Mr. Pocock announced various changes in hibu plc's overall direction into digital services (focusing primarily on the concept of the eMarketplace), the company's future strategic partnerships and acquisitions, and overall internal structure (collectively, the "Transition Strategy").

31.     The Transition Strategy was meant to be a four year program which required significant changes in the company's budget and financial projections.

32.     The Transition Strategy projected a revenue mix to change from 75% print and 25% digital in 2011 to 25% print and 75% digital by 2015; growth of revenues, earnings and cash flow by 2015, together with an increase of 1.5 million customers; and a £100m reduction in fixed costs over the fiscal year of 2012 through the fiscal year of 2013.

33.     The Transition Strategy also relied on the potential success of key partnerships with leading digital providers, such as the announcement of a partnership agreement with Microsoft in July of 2011.

34.     The partnership with Microsoft was intended to provide favorable access to particular Microsoft products, as well as opportunities for investment by Microsoft into hibu's eMarketplace.

7

35.     Another significant part of the Transition Strategy was the 2011 acquisition of Znode, an enterprise e-commerce provider which was meant to spearhead hibu's foray into the eMarketplace.

36.     Despite the announcement of the new strategy and leadership, hibu Inc. employees continued to look to Mr. Walsh for guidance in the implementation of the Transition Strategy.

37.     At Mr. Pocock's direction, Mr. Walsh's termination from employment was facilitated on October 20, 2011.

### Hibu's Transition Strategy Begins to Fail

38.     Mr. Pocock's Transition Strategy has yet to demonstrate that it is viable.  To the contrary, hibu plc continued to struggle to meet its obligations to the 2009 Lenders.

39.     From July of 2011 to the present date, half-way through the Transition Strategy, none of the strategic partnerships or acquisitions have yielded anything even remotely close to the revenue projected by hibu's management.

40.     For example, the partnership with Microsoft in 2011 failed to create any favorable access to products or services, nor has there been any progress or measurable revenue in hibu's purported eMarketplace.  Instead, the partnership has only created additional costs for hibu.

41.     In addition, online stores by Znode was launched as a pilot product in the United States and United Kingdom marketplaces despite warnings from various hibu Inc. executives that the product was deficient.

42.     Mr. Pocock and hibu plc fully launched online stores by Znode in the United States in early 2012. After the product proved to be deficient, costly, and ineffective within its first few months of launching, hibu plc pulled the product off the market.

8

43.     Despite assurances in the July, 2011 announcement of the Transition Strategy that hibu's online stores by Znode would become one of hibu's most critical venture, as of March, 2013 the pilot product in both the United Kingdom and United States has failed.  The Senior Management team talked openly of wanting to shut it down, but it continues in limited form without revenue as it remains a central talking point of Mr. Pocock's promise of one billion dollars in new revenue.

44.     Notwithstanding their personal knowledge of the failures for these initiatives, Mr. Pocock and hibu plc continually projected budgeted revenues for the 2012, 2013, and 2014 fiscal years which were grossly over-inflated due to the known failed partnerships, failed products and products that never reached the marketplace.  They did so despite the knowledge that it was impossible to meet the stated revenue goals.

45.     These desperate misrepresentations were made in large part due to the pressure of crushing financial debt, and the opportunity to again refinance and restructure the business. However, such financial actions required hibu plc to continue projecting significant revenue growth in order to placate the 2009 Lenders.

### Mr. McCusker's Warnings to Mr. Pocock and Hibu

46.     In furtherance of his fiduciary duty to the company, Mr. McCusker voiced his concerns that Mr. Pocock's digital strategies, strategic partnerships, and acquisitions were not only failing, but were being fraudulently represented to the 2009 Lenders, investors, and shareholders as successful endeavors.

47.     For example, Mr. McCusker wrote to Mr. Bates and Mr. Gregerson on April 25, 2012 expressing his concerns about the projected Fiscal Year 2013 budget.  A true and correct

copy of Mr. McCusker's April 25, 2012 e-mail correspondence is attached and incorporated as Exhibit "A".

48.     Mr. McCusker warned Mr. Bates and Mr. Gregerson about the risks of achieving the revenue and expense expectations in light of a budget based on nonexistent products and numbers. See Exhibit "A".

49.     Mr. McCusker assured Mr. Bates and Mr. Gregerson that both he and his team would remain committed to the Transition Strategy and its stated goals, but it needed to be based on real and tangible expenses, budgets, and revenues if it was to succeed. Id.

50.     Mr. Bates and Mr. Gregerson ignored Mr. McCusker's valid concerns, and the 2013 budget was never revised.

### Hibu's Ability to Service its Debt Obligations Worsens

51.     In July of 2012, hibu plc sought to form a coordinating committee (the "CoCom") of the 2009 Lenders. The purpose of establishing the CoCom was to seek certain covenant waivers and negotiate a new capital structure with the 2009 Lenders in order to continue to operate.

52.     By October of 2012, hibu plc was unable to meet its crushing debt burdens and announced that it would be suspending all principal and interest payments to the 2009 Lenders until it could restructure its balance sheet and negotiate a new capital structure.

53.     Mr. McCusker continued to express his concerns about the impossible revenue projections that hibu plc was communicating to the CoCom as it continued to negotiate a restructuring of its debt.

54.     Moreover, Mr. Pocock himself made statements contrary to the viability of the Transition Strategy. In November 2012, Mr. Pocock stated that it was hard to get hibu's auditor,

10

Deloitte, on board with the Transition Strategy because Deloitte did not understand how it could work.

55.     In or around the same time period, Mr. Bates stated that the process to revise the budget for fiscal year 2014 was suspended, and that hibu would utilize the existing projections regardless of their veracity.

56.     Thereafter, in January 2013, Mr. Pocock informed senior management that the implementation of the Transition Strategy was now two years behind schedule.

57.     On February 6, 2013 at an executive meeting in Houston, Texas regarding the fiscal year 2014 budget, Mr. McCusker raised the issue that the year's U.S. budgeted digital revenue was overstated by approximately $200 million dollars.

58.     The original purpose of the meeting was to revise the stated budget, which ultimately never happened.

59.     At the meeting, Mr. McCusker questioned Chris Wilcox, the Chief Financial Officer of hibu's Digital Division, about the overstated digital revenue budget and specifically asked whether what hibu Inc. was doing was honest.

60.     Mr. Wilcox responded: "I can't answer that."

61.     With regard to the same issue identified by Mr. McCusker, Mr. Pocock told management that hibu "could not start the process all over again with the CoCom, and it needed to leave the budget in place."

62.     Mr. Pocock commented that he was "exhausted with the process," and that if the company submitted new revenue numbers, he would have to "start over."

63.     Perhaps most damning was Mr. Pocock's admission at the February 6, 2013 meeting regarding Mr. McCusker's concern that budgeted revenue was overstated.  Mr. Pocock told management "we know revenues can not be delivered."

64.     As stated above, Mr. Pocock did not want to have to explain to the CoCom the revised budget.  Specifically, Mr. Pocock informed management that "the overstated revenue projections could not be unveiled because we already submitted them to the CoCom."

65.     On February 26, 2013, at a staff meeting after the Texas executive meeting, Mr. Bates admitted that the budgeted revenues were unrealistically high; however, he stated that hibu would not revise the fiscal year 2014 budget because the inflated numbers were already submitted to the CoCom for purposes of hibu plc achieving a favorable restructuring of its debt.

66.     Mr. Bates further stated that they would not rework the budget for "a whole host of reasons that are not helpful."  He explained that "to submit new figures to the banks, admits digital revenue projections are too high."

67.     To this day, hibu plc continues to negotiate with the CoCom in an effort to restructure its debt and capital structure in order to allow it to continue operating.

68.     Indicative of the true motivation of Mr. Pocock, Mr. Bates and Mr. Gregerson, was Mr. Gregerson's admission that they were pulling forward the payment of management bonuses "to avoid questions from a new regime."

### Hibu's Termination of Mr. McCusker's Employment

69.     On March 6, 2013, Mr. McCusker's employment was terminated. hibu Inc. alleged, falsely, that Mr. McCusker's employment was terminated for "cause" due to his continuing "contact" with Mr. Walsh, and for allegedly revealing confidential information to Mr. Walsh.

70.     At the March 6, 2013 meeting, Mr. McCusker repeatedly denied that he had any improper contact with, or provided any confidential information to, Mr. Walsh. Representatives of hibu Inc. were unable to provide a single example of any confidential information allegedly disclosed.

71.     Although it was asserted that the company had conducted a thorough investigation, no one had ever spoken to Mr. McCusker prior to March 6, 2013 about any alleged concerns, nor had the company ever directed Mr. McCusker that contact with Mr. Walsh was a forbidden activity. To the contrary, knowing full well of Mr. McCusker's continuing friendship with Mr. Walsh, Mr. Gregerson specifically asked Mr. McCusker whether he "was with them" – meaning whether Mr. McCusker remained committed to the success of hibu. Mr. McCusker told Mr. Gregerson that he was in fact committed to the company, and Mr. Gregerson made no other comment regarding Mr. Walsh.

72.     Hibu Inc. claimed that Mr. McCusker's "disloyalty" was evidenced by phone records showing a series of phone calls between Mr. McCusker and Mr. Walsh, as well as a single benign e-mail exchange.

73.     Mr. McCusker explained that Mr. Walsh remained a close friend and mentor after working with him for nearly fifteen years, and that Mr. McCusker never shared any confidential information with Mr. Walsh.

74.     Despite the lack of evidence that anything about Mr. McCusker's communications with Mr. Walsh were improper, counsel for hibu Inc. stated that "close contact with [Mr. Walsh] is unacceptable." Mr. McCusker, however, had never been previously directed to disassociate himself from Mr. Walsh.

13

75.     Significantly, other employees who are known to have continued to have had contact with Mr. Walsh during their tenure with hibu were not fired for having the temerity to stay in touch with their former colleague and friend.

### Mr. Pocock's Defamatory Statement

76.     Immediately following Mr. McCusker's termination of employment on March 6, 2013, Mr. Pocock proceeded to draft and transmit an e-mail (the "E-mail") to nearly 5,000 hibu employees regarding Mr. McCusker's firing. A true and correct copy of the March 6, 2013 E-mail is attached and incorporated as Exhibit "B".

77.     The E-mail was addressed to "everyone in hibu US and the Senior Management Team." See Exhibit "B".

78.     In this widely disseminated E-mail, Mr. Pocock stated that Mr. McCusker, along with another employee, was fired due to conduct that "the company considered to be disloyal and against the interests of its employees and other stakeholders." See Exhibit "B".

79.     The E-mail also contained the statement that hibu was "contemplating further legal action" against Mr. McCusker. Id.

80.     The E-mail intentionally and maliciously defamed Mr. McCusker.

81.     The statements made by Mr. Pocock in the E-mail were knowingly malicious and false.

82.     Mr. Pocock made the defamatory statements knowing that they were false or with reckless disregard as to truth of the statements.

83.     Mr. McCusker's so-called "disloyalty" was nothing more than the proper exercise of his fiduciary duty to question senior management's repeated misrepresentations to hibu plc's board of directors, creditors and shareholders with respect to budgeted revenue. The budgeted

14

revenue figures were known by senior management to be unrealistic and unattainable as they were based on failed or non-existent products, initiatives, and relationships with hibu's business partners.

84. None of the employees to which the E-mail was addressed were required to know of the alleged circumstances surrounding Mr. McCusker's termination of employment.

85. The E-mail caused such commotion among hibu employees that it was republished on blogs and forums across the Internet, further disseminating Mr. Pocock's defamatory comments regarding Mr. McCusker's business practices and ethics.

## COUNT I
### Defamation
### Mr. McCusker v. Mr. Pocock, hibu plc, and hibu Inc.

86. Mr. McCusker incorporates by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

87. The factual statements made by Mr. Pocock in his position as Chief Executive Officer of hibu plc to nearly 5,000 hibu employees were designed to and did in fact apply to Mr. McCusker.

88. The statements made by Mr. Pocock were defamatory *per se.*

89. The statements were designed to and were in fact understood to have a defamatory meaning with respect to Mr. McCusker.

90. Mr. McCusker has suffered, and will continue to suffer, damages as a result of the defamatory statements, including lost business opportunities, emotional distress, public humiliation, and damage to his reputation.

91. Any potential qualified or conditional privilege to make the defamatory statements set forth in the E-mail was exceeded and abused.

92.     The E-mail was sent for a purpose that no privilege can justify.

93.     The E-mail was sent maliciously, without just cause or reason.

94.     The E-mail contained defamatory statements which were unnecessary to accomplish any privileged purpose.

95.     Mr. Pocock's malicious and defamatory statements were reckless, outrageous, and made without just cause or reason, entitling Mr. McCusker to an award of punitive damages.

WHEREFORE, Mr. McCusker respectfully requests that the Court enter judgment in his favor and against hibu plc, hibu Inc., and Mike Pocock in an amount in excess of $50,000.00, plus costs, interest, punitive damages, and such other relief as the Court deems just and proper.

### COUNT II
#### Violation of Pennsylvania Wage Payment and Collection Law
#### Mr. McCusker v. All Defendants

96.     Mr. McCusker incorporates by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

97.     When Mr. McCusker was promoted to the position of President of hibu Inc. in April of 2012, he entered into an employment agreement with hibu Inc. (the "Employment Agreement"). A true and correct copy of the Agreement is attached and incorporated as Exhibit "C".

98.     Pursuant to the Employment Agreement, in the event Mr. McCusker's employment is terminated without "Cause," he is entitled to certain severance benefits including, without limitation, continuing salary, bonus, and benefits pursuant to the benefit plans of hibu Inc. and hibu plc in which Mr. McCusker participated (collectively, the "Severance Benefits").

99.     Mr. McCusker's employment was terminated without "Cause" as that term is defined in the Employment Agreement.

16

100. Mr. McCusker was paid for his accrued but unused vacation days, but has not received the Severance Benefits.

101. Mr. McCusker was an "employee" within the meaning of the WPCL.

102. The Severance Benefits constitute "wages" within the meaning of the WPCL.

103. The Individual Defendants participated in hibu Inc.'s corporate policy-making, including the decision to refuse to pay the wages due and owing to Mr. McCusker.

104. Hibu Inc., hibu plc, and the Individual Defendants are "employers" within the meaning of the WPCL.

105. As a result of the Defendants' failure and refusal to pay Mr. McCusker the Severance Benefits, the Defendants have violated the WPCL.

106. The Defendants have no good faith defense of their violation of the WPCL.

107. Pursuant to the WPCL, the Defendants are required to pay liquidated damages to Mr. McCusker in an amount equal to 25% or $500, whichever is greater, of all outstanding wages.

108. The WPCL imposes a mandatory award of attorneys' fees and costs on employers who fail to pay wages owed to their former employees.

109. Therefore, pursuant to the WPCL, the Defendants are liable to Mr. McCusker for all of the compensation and benefits that constitute "wages" within the meaning of the WPCL, together with liquidated damages equal to 25% of such amount, in addition to attorneys' fees, costs, and interests.

WHEREFORE, Mr. McCusker respectfully requests that the court enter judgment in his favor and against all Defendants in an amount in excess of $50,000.00, plus costs, liquidated damages, attorneys' fees, interest, and such other relief as the Court deems just and proper.

17

HAINES & ASSOCIATES

Date:  September 2, 2014

CLIFFORD E. HAINES
*Attorney for Plaintiff*

## VERIFICATION

I, James McCusker, verify that the statements made in the foregoing writing and any attachments thereto are true and correct to the best of my information and belief. I understand that false statements therein are made subject to the penalties of 18 Pa.C.S.A. § 4904, relating to unsworn falsifications to authorities.

James McCusker

RECEIVED
PROTHONOTARY
OF BUCKS COUNTY
14 SEP -2 PM 2:22

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | |
| JAMES McCUSKER<br>35 Bittersweet Drive<br>Doylestown, PA 18901, | :<br>:<br>: Civil Action No. _____ |
| Plaintiff, | :<br>: |
| - v. - | : Pennsylvania Court of Common Pleas<br>: Case No. 2014-01608 |
| HIBU PLC,<br>HIBU INC.,<br>MIKE POCOCK,<br>TONY BATES,<br>BOB WIGLEY,<br>ELIZABETH G. CHAMBERS,<br>JOHN COGHLAN,<br>TOBY COPPEL,<br>CARLOS ESPINOSA de los MONTEROS,<br>KATHLEEN FLAHRETY,<br>RICHARD HOOPER, and<br>BOB GREGERSON | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| Defendants. | :<br>: |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | |

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2014, a true and correct copy of the foregoing Notice of Removal, with attached Exhibits, was served via email and first class mail upon:

Clifford Haines, Esq.
Haines & Associates
1835 Market Street, Ste. 2420
Philadelphia, PA 19103
chaines@haines-law.com
*Attorney for Plaintiff*

A true and correct copy of the foregoing Notice of Removal, with attached Exhibits, was also filed via hand delivery with the following:

5

Clerk of Courts
Bucks County Courthouse
55 East Court Street
Doylestown, Pennsylvania 18901

Dennis M. Mulgrew, Jr.

October 3, 2014

6