## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JAMES McCUSKER, | : | |
| | : | CIVIL ACTION NO. |
| *Plaintiff,* | : | 2:15-CV-2659 |
| vs. | : | |
| | : | **JURY TRIAL DEMANDED** |
| hibu PLC, et al., | : | |
| | : | |
| *Defendants.* | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' PARTIAL MOTION TO DISMISS


Respectfully submitted:



   __/s/ Clifford E. Haines_____
CLIFFORD E. HAINES (admitted *pro hac vice*)
chaines@haines-law.com
**HAINES & ASSOCIATES**
The Widener Building, 5th Floor
1339 Chestnut Street
Philadelphia, PA 19107
(Tel.) (215) 246-2200
(Fax) (215) 246-2211

**TABLE OF CONTENTS**

TABLE OF CITATIONS…………………………………………………………………………………..ii

I.      FACTUAL BACKGROUND ................................................................................................ 1

II.     ARGUMENT ........................................................................................................................ 3

        A.      Legal Standard ........................................................................................................ 4

        B.      Plaintiff Has Adequately Pleaded a Defamation Claim. ....................................... 5

                1.      No privilege attaches to hibu's communication about the termination of a
                        senior executive or else the privilege has been abused. ........................................ 6

                2.      hibu's communication is false and misleading by innuendo. ............................... 8

                3.      hibu's statements are not pure opinion and are subject to scrutiny as to
                        whether they are defamatory as a matter of fact, not law and therefore
                        cannot be dismissed at the motion to dismiss stage. .............................................. 9

III.    CONCLUSION ................................................................................................................... 11

CERTIFICATE OF SERVICE

**Cases**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ........................................................................4, 5

*Bakare v. Pinnacle Health Hosp., Inc.*, 469 F. Supp. 2d 272 (M.D. Pa. 2006) ...........................5

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ...............................................................4, 5

*Berg Chilling Sys. v. Hull Corp.*, 435 F.3d 455 (3d Cir. 2006) ...........................................4

*Bogash v. Elkins,* 176 A.2d 677 (Pa. 1962) ...................................................................8

*Byrd v. Sacco,* 2006 Phila. Ct. Com. Pl. LEXIS 291 (Pa. C.P. 2006) ...................................7

*Calhoun v. Yamaha Motor Corp.*, 216 F.3d 338 (3d Cir. 2000) .........................................4

*Devon Robotics v. Deviedma,* 2009 U.S. Dist. LEXIS 112077 (E.D. Pa. Nov. 30, 2009) .........................6

*Fanelle v. LoJack Corp.*, 79 F. Supp.2d 558 (E.D. Pa. 2000) ...........................................5

*Griffith v. United Air Lines, Inc.*, 203 A.2d 796 (Pa. 1964) ...........................................4

*Klaxon v. Stentor Electric Mfg. Co.,* 313 U.S. 487 (1941) .............................................4

*Miketic v. Baron,* 450 Pa. Super. 91 (Pa. Super. Ct. 1996) ...........................................6

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ................................................9, 10

*Moore v. Cobb-Nettleton,* 2005 PA Super 426 (Pa. Super. Ct. 2005) ...............................7, 8

*Mzamane v. Winfrey,* 693 F.Supp.2d 442 (E.D.Pa. 2010) ...........................................8, 9

*Phillips v. County of Allegheny*, 515 F. 3d 224 (3d. Cir. 2008) ........................................4

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235 (1981) ...................................................4

*Regis Ins. Co. v. A.M. Best Co.,* 2013 U.S. Dist. LEXIS 28006 (E.D. Pa. Mar. 1, 2013) ...........................6

*Sarkees v. Warner-West Corp.,* 37 A.2d 544 (Pa. 1944) .............................................8

*Sias v. General Motors Corp.,* 372 Mich. 542 (Mich. 1964) .........................................8

*Thomas Merton Ctr. v. Rockwell Int'l Corp.,* 442 A.2d 213 (Pa. 1981) ...............................8

**Statutes**

18 U.S.C. § 1831 ................................................................................................................7

28 U.S.C. § 1332 ................................................................................................................3

28 U.S.C. § 1404 (a) ......................................................................................................3, 4

42 Pa.C.S.A. § 8343(a) (Purdon's 2010) ..........................................................................5

**Other Authorities**

Restatement (Second) of Torts § 566A ..............................................................................9

*Webster's New World Dictionary* (1984) ..........................................................................9

**Rules**

Fed.R.Civ.P. 12 (b) (6) ...............................................................................................1, 3, 4

Plaintiff James McCusker ("Plaintiff" or "McCusker") hereby responds in opposition to the motion to dismiss pursuant to Fed.R.Civ.P. 12 (b) (6) filed by Defendants hibu plc and hibu Inc. ("hibu") and Michael Pocock ("Pocock")(collectively, "Defendants").  The Defendants ask the Court to dismiss McCusker's defamation claim as a matter of law.  For all the reasons set forth in this memorandum, the motion must be denied.

## I.     FACTUAL BACKGROUND

 On March 6, 2013, Mr. McCusker, a dedicated employee for the past twenty-four years who worked his way up the corporate ladder from a sales position to become the President of hibu Inc., was unceremoniously fired. The reason given was that he allegedly gave confidential company information to hibu Inc.'s former Chief Executive Officer, Joe Walsh.

The allegations against Mr. McCusker were false, fabricated, and a pretext for the real motivation behind the firing-Mr. McCusker repeatedly questioned not only the soundness but the integrity and validity of grossly inflated financial projections being communicated to the shareholders and creditors of hibu Inc.'s parent corporation, hibu plc.  The creditors held the key to the company's ability to continue to operate since the company was, and continues to be, in dire financial straits, desperately seeking to negotiate a new capital structure after defaulting on its obligations to its creditors.

In addition, hibu Inc. and hibu plc's senior management were on a witch hunt for any employees who maintained contact and social ties to Mr. Walsh, the charismatic former CEO of hibu Inc. who was widely seen as a popular executive by hibu Inc.'s thousands of employees. Not long before his employment was terminated, Mr. Walsh, together with a private equity firm, tendered an offer to hibu plc's board of directors to purchase the U.S. assets of hibu Inc. for nearly two billion dollars. The board, in consultation with the new Chief Executive Officer, Mike

1

Pocock, rejected the offer and has since then sat back and watched the value of the company plummet as the new strategic plan put in place began to fail miserably and the company teetered on the brink of insolvency. Upon information and belief, in the fall of 2012, Mr. Walsh and a private equity firm tendered a second offer to the board to purchase the same assets – for four hundred million dollars. The latest offer has not been acted upon by the board as of the filing of this Complaint.

Moreover, hibu Inc. wanted to avoid its contractual-obligation to provide Mr. McCusker with significant severance benefits. The only way to avoid this obligation was to falsely accuse Mr. McCusker of engaging in conduct constituting "cause" for termination under the terms of his employment agreement.

To add insult to injury, immediately following the termination of Mr. McCusker's employment, defendant Mike Pocock, hibu plc's Chief Executive Officer, sent an inflammatory e-mail to thousands of hibu Inc. and hibu plc employees in which Mr. Pocock maliciously defamed and disparaged Mr. McCusker. In his e-mail, Mr. Pocock falsely told the employees that the company had performed a "thorough investigation" and concluded that Mr. McCusker engaged in conduct that was "disloyal and against the interests of [hibu's] employees and other stakeholders." Mr. Pocock went on to further defame Mr. McCusker by implying that the alleged disloyal conduct was so egregious that the company was considering further action against Mr. McCusker, including the institution of "legal proceedings."

Through this lawsuit, Mr. McCusker seeks to recover the severance benefits and other compensatory damages rightfully due to him as a result of the defendants' violation of the Pennsylvania Wage Payment and Collection Law (the "WPCL"). Mr. McCusker further seeks to recover compensatory and punitive damages from Mr. Pocock and hibu plc as a result of the

false and malicious defamatory communications made in an effort to tarnish Mr. McCusker's good name and reputation in the community and the industry to which he has faithfully devoted his career.

On September 2, 2014, Plaintiff filed this action in the Pennsylvania Court of Common Pleas. The Complaint alleges, *inter alia,* a defamation claim based on an email hibu circulated among its employees to give notice of McCusker's termination. Defendants removed the case to the United States District Court for the Eastern District of Pennsylvania on October 3, 2014 based on federal diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendants then filed a motion to dismiss the Complaint. The Eastern District of Pennsylvania converted the motion to dismiss to a transfer venue pursuant to 28 U.S.C. § 1404 (a) and on April 8, 2015, transferred this action to this Court. Pursuant to the Scheduling Order of this Court dated June 29, 2015 (Docket 27), Defendants timely served, but did not file, their motion to dismiss on Plaintiff. This memorandum in opposition, too, is timely served on Defendants, but not filed in accordance with the Court's Scheduling Order and preferences.

## II.    ARGUMENT

Defendants have filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss Plaintiff's defamation claim (Count II) asserting 3 grounds: (i) the common interest privilege; (ii) truth; and (iii) nonactionable opinion. Defendants' Motion to Dismiss the defamation claim should be denied because (i) the common interest privilege does not apply and/or it has been abused; (ii) the statements at issue were not true or were put together in a way that would lead the read to a false conclusion; and (iii) the alleged opinions in this case are actionable because they could reasonably be understood by the average listener to imply the existence of undisclosed defamatory facts.

3

## A.    Legal Standard

To survive a motion to dismiss pursuant to Fed.R.Civ.P. 12 (b) (6), a plaintiff is required to plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not "impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the alleged wrongdoing. *Id.* at 556. Even after *Twombly*, however, the standard remains that courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F. 3d 224, 233 (3d. Cir. 2008).[1]

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), the Court clarified the *Twombly* inquiry as two-pronged. First, the court should consider the sufficiency of the complaint, identifying the factual allegations that are to be accepted as true and those allegations that are legal conclusions and are not entitled to the assumption of truth. *Id.* Second, the court must consider whether the factual allegations plausibly suggest the plaintiff is entitled to relief. *Id.* To

---

[1] As the Defendants properly noted in their motion to dismiss at n. 3, under *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941), in a diversity jurisdiction matter, a court ordinarily must apply the choice-of-law rules of the State in which it sits. However, where, as here, a case is transferred pursuant to 28 U.S.C. § 1404 (a), it must apply the choice-of-law analysis of the State from which the case was transferred. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243, n.8 (1981). Federal courts sitting in diversity apply the choice of law rules of the forum state. *Calhoun v. Yamaha Motor Corp.*, 216 F.3d 338, 343 (3d Cir. 2000). Therefore the court should look to Pennsylvania law. Pennsylvania choice of law rules focus on the "policies and interests underlying the particular issue before the court" to determine which state's law applies. *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805-06 (Pa. 1964). Moreover, "[b]ecause [Pennsylvania] choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case, a principle known as 'depacage.'" *See Berg Chilling Sys. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) (internal citation omitted). At this stage of the proceedings, the parties have yet to develop the necessary facts with which the court can look at the policies and interests underlying the issues before the court, especially in light of the fact that there are three potentially interested states. It is for the Court to determine at some later time, which law applies. However, it seems the parties agree that the law of Pennsylvania should apply to this dispute. Accordingly, as did the Defendants, Plaintiff has briefed his response under Pennsylvania law. If the Court directs otherwise, Plaintiff will comply.

determine plausibility, the court should be "context-specific" and "draw on its judicial experience and common sense." *Id.* A complaint may not be dismissed merely when it "strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 127 S. Ct. at 556. The claims must have facial plausibility, meaning the factual content in the complaint allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009).

Here, when the fact pleaded in the complaint are taken as true and all inferences are drawn in the light most favorable to the Plaintiff, a reasonable factfinder could conclude that McCusker is entitled to relief. Accordingly, the motion should not be granted and Count II of the Complaint survives a motion to dismiss.

### B.    Plaintiff Has Adequately Pleaded a Defamation Claim.

To set forth a claim for defamation in Pennsylvania, a plaintiff must allege: "(1) the communication was defamatory; (2) publication by the defendant; (3) the communication applies to plaintiff; (4) the recipient of the communication understands the communication's defamatory meaning; (5) the recipient understands the communication to be intended to apply to plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion." *See* 42 Pa.C.S.A. § 8343(a) (Purdon's 2010). *See also Fanelle v. LoJack Corp.*, 79 F. Supp.2d 558, 561-562 (E.D. Pa. 2000). The plaintiff need not prove special harm for statements that constitute defamation per se, which includes publications that "impute to another conduct, characteristics, or a condition that would adversely affect his or her lawful business trade." *See Bakare v. Pinnacle Health Hosp., Inc.*, 469 F. Supp. 2d 272, 298 (M.D. Pa. 2006) (citations omitted).

Under Pennsylvania law, a statement is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Devon Robotics v. Deviedma,* 2009 U.S. Dist. LEXIS 112077, 24-25 (E.D. Pa. Nov. 30, 2009)(applying Pa. law). The touchstone in determining whether a statement is capable of defamatory meaning is how the statement would be interpreted by the average person to whom it was directed. *Regis Ins. Co. v. A.M. Best Co.,* 2013 U.S. Dist. LEXIS 28006 (E.D. Pa. Mar. 1, 2013).

> **1.      No privilege attaches to hibu's communication about the termination of a senior executive or else the privilege has been abused.**

Defendants assert that under the common interest privilege, because the communication was intra-corporate, they are immune from liability for defamation. But, Defendants overstate and misapply the "common interest" privilege. In any event, even if the common interest privilege might apply, it was abused.

As the Pennsylvania Superior Court observed regarding the common interest privilege in *Miketic v. Baron,* 450 Pa. Super. 91, 101 (Pa. Super. Ct. 1996)(citation omitted):

> Communications made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause are privileged.
>
> "'An occasion is conditionally privileged when the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know.'"
>
> Thus, proper occasions giving rise to a conditional privilege exist when (1) some interest of the person who publishes defamatory matter is involved; (2) some interest of the person to whom the matter is published or some other third person is involved; or (3) a recognized interest of the public is involved.

*Id.* But, a conditional privilege may be lost if the publisher exceeds the scope of his privilege by publishing the defamation to unauthorized parties. *Miketic,* 450 Pa. Super. at 97-98. While it is a question of law whether privilege applies in a given case, it's a question of fact for the jury to

decide whether a privilege has been abused. *Id.*  It is Defendants' burden to prove privilege.

*Moore v. Cobb-Nettleton,* 2005 PA Super 426, P6 (Pa. Super. Ct. 2005).  Here, the Defendants

argued that they were privileged do describe McCusker as "disloyal" and suggest that he was

terminated for sharing company secrets.  The Defendants believe that because McCusker was a

high-level executive of hibu, sharing information about his termination falls squarely within the

confines of the common interest privilege.

      However, accusing Plaintiff of "disloyalty" and threatening legal action would be understood by

anyone, including but not limited to the rank and file employees at hibu, as a slur that would lower

Plaintiff in the estimation of the community and certainly deter others from wanting to deal with him in

business and otherwise.  Indeed, giving away company secrets, as the communication implies, can be

deemed a crime under the U. S. Espionage Act of 1996, 18 U.S.C. § 1831*, et. seq.*  There was no proper

occasion for the inclusion of those accusations in a notice of dismissal or termination-especially to all

5,000 employees of hibu.  Since this was an inappropriate communication of false information, the email

is not privileged.

      The conditional privilege is also abused when the publication includes defamatory matter

not reasonably believed to be necessary for the accomplishment of the purpose. *Byrd v. Sacco,*

2006 Phila. Ct. Com. Pl. LEXIS 291 (Pa. C.P. 2006). While perhaps a notification of termination

was reasonably necessary, there was no reason to include trumped up charges of disloyalty and a

suggestion of further legal action other than to defame Plaintiff.

      Further, the defamation was communicated to every employee at hibu. While supervisors,

maybe even board members, might have had a legitimate reason to know that Plaintiff had been

accused of disloyalty (assuming, *arguendo*, that they were true, which they were not), not every

one of the 5,000 or so employees at hibu did.  Thus, any privilege that might have applied here

has been abused. See, *e,g*., *Sias v. General Motors Corp.*, 372 Mich. 542, 548 (Mich. 1964)(declining to extend the privilege beyond disclosures to supervisory ranks).

### 2. hibu's communication is false and misleading by innuendo.

Defendants argue that the defamation claim must be dismissed because the statements at issue are true, or substantially true. Truth is an absolute defense of which Defendants bear the burden of proof. *Moore v. Cobb-Nettleton,* 2005 PA Super 426, P6 (Pa. Super. Ct. 2005). But, even when a written statement is true or substantially true, it can still be defamatory if the true statements are cobbled together in a way that is designed to lead the reader to an untrue and defamatory conclusion. *Mzamane v. Winfrey,* 693 F.Supp.2d 442, 477 (E.D.Pa. 2010); *see also Thomas Merton Ctr. v. Rockwell Int'l Corp.,* 442 A.2d 213, 217 (Pa. 1981); *Bogash v. Elkins,* 176 A.2d 677, 679 (Pa. 1962); *Sarkees v. Warner-West Corp.,* 37 A.2d 544, 546 (Pa. 1944) (cases each analyze the tort of defamation by innuendo). To establish defamation by innuendo, the implication "must be warranted, justified and supported by the publication." *Thomas Merton Ctr.,* 442 A.2d at 217. Indeed, the Pennsylvania Supreme Court has explained:

> The purpose of an innuendo, as is well understood, is to define the defamatory meaning which the plaintiff attaches to the words; to show how they come to have that meaning and how they relate to the plaintiff. But it cannot be used to introduce new matter, or to enlarge the natural meaning of the words, and thereby give to the language a construction which it will not bear. It is the duty of the court in all cases to determine whether the language used in the objectionable [writing] could fairly and reasonably be construed to have the meaning imputed to it by the innuendo. If the words are not susceptible of the meaning ascribed them by the plaintiff and do not sustain the innuendo, the case should not be sent to a jury…[Consequently,] [i]f the publication complained of is not in fact libelous, it cannot be made so by an innuendo which puts an unfair and forced construction on the interpretation of the publication.

*Sarkees,* 37 A.2d at 546.

Here, the language at issue, even if the statements taken individually are true or substantially true, creates in the aggregate a misimpression of the reason for McCusker's termination. Indeed, he is painted

as "disloyal," which is far from the truth.  The term "disloyal" means "not loyal." *Webster's New World*

*Dictionary* (1984).  The term "actionable" means essentially means conduct giving rise to a cause of

action. See, *Id.* So, essentially, the email circulated to 5,000 hibu employees worldwide, left the readers of

the email with a false impression that McCusker had done something insidious or even criminal.  But, he

did no such thing.  Painting McCusker as disloyal taints his reputation and makes those who read the

email less likely to want to do business or continue to maintain any kind of relationship with McCusker.

The email provides no basis on which to draw the conclusion that McCusker engaged in an activity that

would subject him to civil or criminal liability.  Thus, the reader is not provided with sufficient

information to disregard the conclusion, reach his own conclusion, but rather leaves the reader thinking

that hibu has access to additional facts to substantiate these untrue conclusions.  That is the very definition

of defamation by innuendo.

       Accordingly, the motion to dismiss the defamation claim must be denied.

      **3.**      **hibu's statements are not pure opinion and are subject to scrutiny as to whether they are defamatory as a matter of fact, not law therefore cannot be dismissed at the motion to dismiss stage.**

       Finally, the Defendants argue that there can be no defamation in this case because the statements

at issue are nonactionable opinions. .  However, absolute protection applies only to pure opinion

speech.  *Milkovich v. Lorain Journal Co*., 497 U.S. 1, 18 (1990).  When an opinion relies on

empirical or objective evidence for support, it may be actionable, when that evidence is false and

defamatory.  When opinion speech discloses untrue statements of fact, it is no longer absolutely

protected.  See, e.g., *Mzamane,* 693 F. Supp.2d at 481-83.  When all the facts are disclosed, an

opinion cannot be defamatory because the listener is able to evaluate the facts for himself and is

free to disregard the conclusion the speaker made from these facts.  Restatement (Second) of

Torts § 566A; *Mzamane,* 693 F. Supp.2d at 481.  But when an opinion discloses only *some* of the

facts on which it based, it is capable of defamatory meaning and therefore actionable. *Milkovich,*

497 U.S. at 18-19 ("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications....")).

Here, as hibu must concede, whether conduct is "actionable" involves objective analysis of the law.  It is implausible that a company of hibu's size and scope would not have had a statement like the one circulated regarding McCusker's termination from the company vetted by either a public relations manager or a lawyer or both. There is no disclosure of the facts leading to that conclusion and therefore, the reader is unable to accept or reject the conclusion without also accepting the defamatory facts on which the Defendants' conclusion is based.

The Defendants' use of hyperbole has backfired.  Indeed, had Defendants stated that they found Plaintiff to be "disloyal" because he merely had phone conversations with an old friend, Defendants would have looked foolish and paranoid.  Instead, they covered their spite in a cloak of fantasy misdeeds and made false accusations about McCusker.  The failure to disclose the flimsy to nonexistent factual support for their wild accusations renders the Defendants' opinions actionable here.  Therefore, the motion to dismiss must be denied.

## III.    CONCLUSION

Defendants' Motion to Dismiss should be denied because (i) the common interest privilege does not apply and/or it has been abused; (ii) the statements at issue were not true and/or; (iii) the alleged opinions in this case are actionable because they could reasonably be understood by the average listener to imply the existence of undisclosed defamatory facts.

Respectfully submitted:

/s/ Clifford E. Haines
Clifford E. Haines (admitted *Pro Hac Vice*)
HAINES & ASSOCIATES
The Widener Building, 5th Floor
1339 Chestnut Street
Philadelphia, PA 19107
chaines@haines-law.com
Phone: 215-246-2200
Fax   :  215-246-2211
*Counsel for Plaintiff James McCusker*

Dated: August 7, 2015

11

## <u>CERTIFICATE OF SERVICE</u>

I, Clifford E. Haines, certify that on the date set forth below, I caused a true and correct copy of

the foregoing Plaintiff's Response to Defendants' Motion to Dismiss and Proposed Order to be served

email and U.S. Mail upon counsel for the Defendants as follows:

Bret A. Cohen, Esquire
Gauri P. Punjabi, Esquire
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C.
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
Fax: (617) 542-2241

and

Terry McMahon, Esquire
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C.
Chrysler Center
666 Third Avenue
New York, NY 10017
Tel: (212) 935-3000
Fax: (212) 983-3115
***Counsel for Defendants***

Date: August 7, 2015                    */s/ Clifford E. Haines*_____
                                        CLIFFORD E. HAINES
                                        *Counsel for Plaintiff*