UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JAMES MCCUSKER,

                              MEMORANDUM AND ORDER

            Plaintiff,                CV 15-2659

      -against-                  (Wexler, J.)

HIBU PLC,
HIBU INC.,
MIKE POCOCK,
TONY BATES,
BOB WIGLEY,
ELIZABETH G. CHAMBERS,
JOHN COGHLAN,
TOBY COPPEL,
CARLOS ESPINOSA de los MONTEROS,
KATHLEEN FLAHRETY,
RICHARD HOOPER, and
BOB GREGERSON,

            Defendants.

------------------------------------------------------------X

APPEARANCES:

    HAINES & ASSOCIATES
    BY:   Clifford E. Haines, Esq.
    Attorneys for Plaintiff
    The Widener Building, 5th Floor
    1339 Chestnut Street
    Philadelphia, PA 19107

    MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C.
    BY:   Bret A. Cohen, Esq.
           Gauri P. Punjabi, Esq.
    Attorneys for Defendants hibu PLC, hibu Inc. and Michael Pocock
    One Financial Center
    Boston, MA 02111

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C.
BY: Terry McMahon, Esq.
Attorneys for Defendants hibu PLC, hibu Inc. and Michael Pocock
666 Third Avenue
New York, New York 10017

WEXLER, District Judge:

Plaintiff commenced this action against his former employer in the Pennsylvania Court of Common Pleas on September 2, 2014, alleging a violation of the Pennsylvania Wage Payment and Collection Law, as well as defamation. Defendants removed the action to the United States District Court for the Eastern District of Pennsylvania on October 3, 2014, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Thereafter, Defendants moved to dismiss Plaintiff's Complaint. The Pennsylvania federal court construed the motion to dismiss as a motion to transfer venue, pursuant to 28 U.S.C. § 4104(a), and, on April 8, 2015, transferred the action to this Court.

Before the Court is a motion for partial dismissal of Plaintiff's Complaint by Defendants hibu plc, hibu Inc. and Michael Pocock,[1] seeking only to dismiss Plaintiff's defamation claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the motion. For the following reasons, Defendants' motion to dismiss is denied.

---

[1] While there are a number of other additional individual defendants named in the Complaint, none have appeared thus far in this action. Moreover, it appears from the Notice of Removal filed in the Pennsylvania federal court that only Defendants hibu PLC, hibu Inc. and Michael Pocock have been served in this action. (Notice of Removal ¶ 2.)

## BACKGROUND

Defendant hibu PLC, is a publicly-traded company based in the United Kingdom that supplies print and online advertising for small and medium-sized businesses. (Compl. ¶ 16.) Defendant hibu Inc., a wholly-owned subsidiary of hibu PLC, is the publisher of the "Yellow Book" print and online telephone and advertising directories in the United States. (Compl. ¶¶ 17-18.) Hibu PLC and hibu Inc. are generally referred to as a singular "group" for purposes of financial reporting and operations, (compl. ¶ 18), and will be referred to herein solely as "hibu."

Plaintiff, James McCusker ("McCusker" or "Plaintiff"), began his employment with hibu Inc. in 1989 as a sales representative. (Compl. ¶ 21.) At that time, Joe Walsh ("Walsh") served as hibu Inc.'s Chief Executive Officer ("CEO") and was a mentor to Plaintiff during his career with hibu. (Compl. ¶¶ 19, 23.) Over the years, Plaintiff worked his way up through various leadership positions within hibu Inc., eventually being named President and CEO. (Compl. ¶ 21.)

As a result of financial difficulties, in 2009, hibu PLC underwent a complete refinancing and recapitalization, resulting in the business being funded primarily through bank loans. (Compl. ¶¶ 24-26.) When hibu PLC struggled to meet its obligations under those bank loans in 2010, the Chairman of hibu's Board of Directors, Bob Wigley, instructed Walsh to look for potential purchasers of hibu's United States assets, including hibu Inc. (Compl. ¶ 27.) In the Fall of 2010, Walsh, together with a private equity firm, submitted an offer to purchase hibu's United States assets for nearly two billion dollars. (Compl. ¶ 28.) Walsh's offer was rejected in early 2011, shortly after Defendant Michael Pocock ("Pocock") was appointed CEO and to the Board of Directors of hibu PLC. (Compl. ¶ 29.) Walsh's employment with hibu was terminated on

October 20, 2011. (Compl. ¶ 37.) On April 15, 2012, Plaintiff was appointed President and CEO of hibu, Inc. (Compl. ¶ 22.)

As CEO of hibu PLC, Pocock announced various changes in hibu's overall direction into digital services, future strategic partnerships and acquisitions and its overall internal structure. (Compl. ¶ 30.) Designed to be a four-year program, known as the "Transition Strategy," Pocock's plan would require significant changes in the company's budget and financial projections. (Compl. ¶ 31.) Plaintiff voiced concerns to members of hibu's upper management that Pocock's Transition Strategy was not only failing, but was being fraudulently represented to the company's lenders, investors and shareholders. (Compl. ¶ 46.) Plaintiff continued to voice concerns regarding hibu's financial position and the Transition Strategy throughout 2012 and into 2013. (Compl. ¶¶ 51-68.)

On March 6, 2013, hibu terminated Plaintiff for cause, citing his continuing contact with Walsh, and for allegedly revealing confidential information to Walsh. (Compl. ¶ 69.) Plaintiff denied that he had any improper contact with, or provided any confidential information to, Walsh. (Compl. ¶ 70.)

That same day, Pocock sent an email (the "Email") concerning Plaintiff's termination to "everyone in hibu US and the Senior Management Team," which included nearly 5,000 hibu employees. (Compl. ¶¶ 76-77.) The email advised hibu employees that Plaintiff and another employee were "dismissed" that day "following a thorough investigation into conduct by them that the Company considered to be disloyal and against the interests of its employees and other stakeholders." (Compl. ¶ 78; Punjabi Aff. Ex. 1.) The Email further stated that hibu was "considering what further action to take, including legal proceedings against the individuals

-4-

involved, to protect its interests." (Compl. ¶ 79; Punjabi Aff. Ex. 1.) The Email was subsequently republished by hibu employees on blogs and forums across the Internet. (Compl. ¶ 85.)

DISCUSSION

I.  Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when the "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). As a general rule, the court is required to accept as true all of the allegations contained in the complaint. See Iqbal, 556 U.S. at 678; Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678-79 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. Iqbal, 556 U.S. at 679. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Iqbal, 556 U.S. at 678 (quoting Twombly, 555 U.S. at 557).

II. Defamation

"Defamation is a communication which tends to harm an individual's reputation so as to lower him or her in the estimation of the community or deter third persons from associating or dealing with him or her." Moore v. Cobb-Nettleton, 889 A.2d 1262, 1267 (Pa. Super. Ct. 2004) (quoting Elia v. Erie Ins. Exch., 634 A.2d 657, 660 (Pa. Super. Ct. 1993)). To state a claim for defamation under Pennsylvania law,[2] Plaintiff must demonstrate the following: "(1) a defamatory communication; (2) publication of the defamatory communication by the defendant; (3) the communication's application to the plaintiff; (4) an understanding by the reader or listener of the statement's defamatory meaning; and (5) an understanding by the reader or listener that the statements refer to plaintiff." Devon Robotics v. Deviedma, No. 09-cv-3552, 2009 U.S. Dist. LEXIS 112077, at *22-23 (E.D. Pa. Nov. 30, 2009) (citing Tucker v. Fischbein, 237 F.3d 275, 281 (3d Cir. 2001)); see also Bell v. Mayview State Hosp., 853 A.2d 1058, 1061 (Pa. Super. Ct. 2005).

The plaintiff has the burden of proving that the communication at issue is defamatory. See Tucker v. Philadelphia Daily News, 848 A.2d 113, 123 (Pa. 2004) (citing 42 Pa. C.S.A § 8343(a)). "It is the function of the court to determine whether the challenged publication is capable of a defamatory meaning. If the court determines that the challenged publication is not capable of defamatory meaning, there is no basis for the matter to proceed to trial." Tucker, 848 A.2d at 123 (citing Thomas Merton Ctr. v. Rockwell Int'l Corp., 442 A.2d 213, 215-16 (Pa. 1981)). Conversely, "[i]f the court determines that the statement is capable of defamatory

---

[2] The parties agree that Pennsylvania law governs Plaintiff's defamation claim. For the reasons stated by the parties in their briefs, the Court concurs. (Pl. Mem. of Law 5 n.3; Def. Mem. of Law 4 n.1.)

meaning, it is for the jury to determine whether it was so understood by the recipient." Veno v. Meredith, 515 A.2d 571, 575 (Pa. Super. Ct. 1986) (quoting Corabi v. Curtis Pub. Co., 273 A.2d 899, 904 (Pa. 1971)).

"A communication is . . . defamatory if it ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession." Constantino v. Univ. of Pittsburgh, 766 A.2d 1265, 1270 (Pa. Super. Ct. 2001) (quoting Maier v. Maretti, 671 A.2d 701, 704 (Pa. Super. Ct. 1995)). In determining whether a communication is defamatory, the Court "must consider the effect the statement would fairly produce, or the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." Maier, 671 A.2d at 704 (citation omitted). Judges and juries must give the words contained in the communication "the same significance that other people are likely to attribute to them." Id. (citing Livingston v. Murray, 612 A.2d 443 (Pa. Super. Ct. 1992)). In addition, the "nature of the audience" to whom the communication is directed is a "critical factor" in determining whether the communication is capable of defamatory meaning. Maier, 671 A.2d at 704 (citations omitted). Finally, while "personal annoyance and embarrassment . . . are not the sorts of injury that will support a defamation claim," Parano v. O'Connor, 641 A.2d 607, 609 (Pa. Super. Ct. 1994) (citation omitted), "no demonstration of any actual harm to reputation is necessary." Devon Robotics, 2009 U.S. Dist. LEXIS 112077, at *24 (citing Marcone v. Penthouse Int'l Magazine for Men, 754 F.2d 1072, 1081 (3d Cir. 1985)).

Here, the Email distributed to all of hibu's employees stated that Plaintiff was terminated for conduct "considered to be disloyal and against the interests of its employees and other stakeholders." (Punjabi Aff. Ex. 1.) It went on to state that hibu was "[c]onsidering what further

action to take, including legal proceedings." (Id.) The Court concludes that this communication is capable of defamatory meaning, as understood by the average person reading it. Simply put, the impression given by the challenged email is that Plaintiff engaged in some sort of unethical conduct, possibly criminal in nature. While it will be for a jury to determine whether the email actually constitutes defamation, at this point in the proceedings, the Court finds that it is capable of being defamatory. See Pasqualini v. Mortgageit, Inc., 498 F. Supp. 2d 659, 671-72 (S.D.N.Y. 2007) (sustaining Plaintiff's defamation claim in response to a motion to dismiss where an email sent regarding Plaintiff's termination described her as "disloyal and incompetent"); see also Agriss v. Roadway Express, Inc., 483 A.2d 456 (Pa. Super. Ct. 1984) (finding statement published to employee's supervisor and co-workers concerning plaintiff's opening of company mail to be defamatory because it implied plaintiff had committed a crime).

II. Defendant's Grounds for Dismissal

Defendant offers three arguments for why Plaintiff's defamation claim should be dismissed: (1) that the Email was a privileged communication to hibu's employees; (2) that the statements contained in the Email are true; and (3) that the statements contained in the Email are permissible statements of opinion.

A. Conditional Privilege

Defendants first argument in support of dismissal is that the Email to its employees was a privileged communication. Under Pennsylvania law, "[l]iability for publication of a defamatory matter may be defeated by a privilege to publish it." Valjet v. Wal-Mart, No. 06-1842, 2007 U.S. Dist. LEXIS 90845, at *27 (E.D. Pa. Dec. 11, 2007) (citing Momah v. Albert

Einstein Med. Ctr., 978 F. Supp. 621, 634 (E.D. Pa. 1997)). While the burden lies with Defendants to prove "the privileged character of the occasion on which it was published," Moore, 889 A.2d at 1267 (citing 42 Pa. C.S.A. § 8343(b)), it is Plaintiff's burden to plead and prove abuse of that privilege. See Daywalt v. Montgomery Hosp., 573 A.2d 1116, 1119 (Pa. Super. Ct. 1990) (citing 42 Pa. C.S.A. § 8343(b)).

"A publication is conditionally privileged if the publisher reasonably believes that the recipient shares a common interest in the subject matter and is entitled to know." Daywalt, 573 A.2d at 1118 (citation omitted). "The conditional privilege applies to communications among management-level personnel concerning an employee's job performance, discipline and termination." Valjet, 2007 U.S. Dist. LEXIS 90845, at *27 (citing Furillo v. Dana Corp. Parish Div., 866 F. Supp. 842, 848 (E.D. Pa. 1994)); Daywalt, 573 A.2d at 1118 ("This privilege applies to private communications among employers regarding discharge and discipline.").

The conditional privilege can be forfeited, however, in a number of ways. Specifically, abuse of the privilege can be demonstrated by proof that the publication was "(1) actuated by malice or negligence; (2) made for a purpose other than that for which the privilege is given; (3) made to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege; or (4) includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose of the privilege." Valjet, 2007 U.S. Dist. LEXIS 90845, at *28 (citing Elia v. Erie Ins. Exch., 634 A.2d 657, 661 (Pa. Super. Ct. 1993)); see also Moore, 889 A.2d at 1269. While the application of a conditional privilege is a question of law for the Court, whether that privilege has been abused is a question of fact for a jury. See Valjet, 2007 U.S. Dist. LEXIS 90845, at *29 (citing Agriss, 483 A.2d at 463).

While it appears that Defendants' Email is, indeed, conditionally privileged, at this stage of the proceedings, the Court finds that Plaintiff has stated enough to raise an issue as to whether Defendants abused that privilege by publishing the Email to all 5,000 hibu employees, some of whom then republished it on the Internet. As stated supra, whether or not Defendants abused their privilege is a question of fact, which is not something that can be resolved on a motion to dismiss.

Accordingly, Defendants' motion to dismiss on the grounds of conditional privilege is denied.

B.  Truth as a Defense

Defendants further argue that because the facts stated in the Email are true, there can be no claim for defamation. Under Pennsylvania law, Defendants bear the burden of proving the truth of the defamatory communication. See Fanelle v. LoJack Corp., 79 F. Supp. 2d 558, 562 (E.D. Pa. 2000) (citing 42 Pa. C.S.A. § 8343.)

"It is well established that truth is an absolute defense to defamation." Fanelle, 79 F. Supp. 2d at 562 (citing Schnabel v. Meredith, 107 A.2d 860 (Pa. 1954)). However, "'the resolution of the substantial truth of [D]efendant's [Email] is not appropriate' on a motion to dismiss under Rule 12(b)(6) because it takes the Court beyond the pleadings." Fanelle, 79 F. Supp. 2d at 562 (quoting RRZ Pub. Mkts., Inc. v. The Bond Buyer, No. 94-1168, 1995 U.S. Dist. LEXIS 604, at *8 (E.D. Pa. Jan. 17, 1995)). The question on a motion to dismiss is whether Plaintiff has stated a claim for defamation, which the Court finds he has. "Any affirmative defenses not appearing on the face of the complaint, including the defense of truth in a defamation claim, are properly considered at another stage of the case." Fanelle, 79 F. Supp. 2d

at 563.

Accordingly, Defendant's motion to dismiss is denied with respect to this ground.

C. Permissible Statements of Opinion

Defendants' final argument in support of dismissal is that the statements contained in the Email are opinions, which are not actionable as defamation. "Whether a particular statement constitutes fact or opinion is a question of law." Veno, 515 A.2d at 92 (quoting Braig v. Field Commcn's, 456 A.2d 1366, 1372 (Pa. Super. Ct. 1983)); see also Constantino, 766 A.2d at 1270 ("It is for the trial court to determine as a matter of law whether a statement is one of fact or opinion . . . .").

It is black-letter law that statements of opinion lack the capability of being defamatory. See Kurowski v. Burroughs, 994 A.2d 611, 616 (Pa. Super. Ct. 2010). However, a statement in the form of an opinion may be actionable if it "may reasonably be understood to imply the existence of *undisclosed* defamatory facts justifying the opinion." Veno, 515 A.2d at 575 (citation omitted) (emphasis in original); see also Parano, 641 A.2d at 609 (same). "A simple expression of opinion based on disclosed . . . facts is not itself sufficient for an action of defamation . . . ." Veno, 515 A.2d at 575 (quoting Braig, 456 A.2d at 1373).

Here, the Email announcing Plaintiff's termination stated that Plaintiff was dismissed after a "thorough" investigation into conduct by Plaintiff that "the Company considered to be disloyal." (Punjabi Aff. Ex. 1.) It further stated that hibu was "considering what further action to take, including legal proceedings." (Id.) While Defendants argue that their characterizations of the investigation as "thorough" and Plaintiff's conduct as "disloyal" are nothing more than mere opinions, the Court disagrees. The reasonable person receiving the Email, which included every

-11-

employee in the company, not just senior management, could interpret it as implying more than what is simply stated. An objective reading of the Email implies that Plaintiff engaged in some sort of unscrupulous or corrupt, and possibly illegal, behavior, and that there is more to the story than what is being conveyed to employees. For these reasons, the Court finds as a matter of law that the statements contained in the Email are not mere opinions.

Accordingly, Defendants' motion to dismiss on this ground is denied.

## CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss Plaintiff's defamation claim is denied in its entirety.

**SO ORDERED:**

Dated: Central Islip, New York
February 11, 2016

/s/
LEONARD D. WEXLER
United States District Judge